United States District Court
Southern District of Texas
FILED

APR 17 2000

Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TRACI LEOPARD AND BRYAN LEOPARD | § § § | |
| PLAINTIFFS | § | |
| VS. | § | C.A. NO. C-00-115 |
| | § | |
| DOLPHIN DOCK, INC., ET AL | § | |
| DEFENDANTS | § | |

### ORIGINAL ANSWER OF DEAN K. LUKE, INDIVIDUALLY, BARRACUDA, INCORPORATED, et al

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes Dean K. Luke, Individually, and denies that he has individual liability for any of the matters claimed by the plaintiffs. That he is the owner of Barracuda, Incorporated, a Texas corporation and is guilty of no act or circumstance that makes him personally liable for the acts of the corporation or operation of the vessel. In the unlikely event and to the extent that he may have any liability he adopts the answers of the corporation set forth below:

Luke further states there is no entity known as Dean K. Luke, d/b/a Barracuda, Incorporated and there is no Barracuda, Inc. To the extent an answer for them is needed, each denies generally any liability and adopts the defenses pleaded by the corporation, Barracuda, Incorporated.

Any additional service needed on Dean K. Luke, Individually; Dean K. Luke, d/b/a Barracuda, Incorporated; and Barracuda, Inc. may be obtained upon counsel cited below.

**ORIGINAL ANSWER OF BARRACUDA, INCORPORATED**

G:\stat1\docs\dolphin.doc\leoprd-2.000\luke-dba.ans(pc)  1

Now comes Barracuda, Incorporated answering the summons as follows:

**1**

1.   This defendant neither admits or denies the suit against it is a maritime claim within the meaning of Rule 9(h) and leaves that proof to the plaintiff.

**2**

2.   Barracuda, Incorporated is a Texas corporation with its principal office and place of business in Port Aransas, Texas. Additional service upon it may be obtained upon its undersigned counsel.

**3**

3.   On or about March 28th, 1998 this corporation was operating the MV Dolphin Express on a fishing trip chartered by Traci Leopard and Bryan Leopard along with many other guests aboard the vessel. The captain on the trip was Phil Hogan. It is reported that Traci Leopard complained of seasickness. She and her husband demanded that the Coast Guard be called to remove her from the vessel. The Coast Guard was called and did respond to the call and removed her from the vessel but refused to carry Bryan Leopard. The vessel, Barracuda, Incorporated, was being operated under a bare boat charter from its owner, Dolphin Express, Inc. Under the charter, a true copy of which is attached hereto and made a part hereof for all purposes, this defendant was solely responsible for the operation of the boat, its management, control, tackle and equipment. Barracuda, Incorporated denies that it or its captain or any members of its crew are guilty of any acts or omissions that were the cause of any loss, damage or injury to Traci Leopard and or that

it was negligent or that the vessel was unseaworthy or guilty of any other fault contributing to her injuries, if any, that she had. The same denial applies to her husband, Bryan Leopard.

**4**

4. This defendant denies that it, its agents and or employees singularly or in combination was guilty of failing to provide an adequate crew, failing to properly have a trained crew, failing to warn of the dangerous conditions that existed on the seas, if any, any offense in choosing to embark on the fishing trip knowing there were inexperienced persons aboard.

**5**

5. In failing to provide any safe means of rescue or disembarkation and or guilty of any other acts of omissions or commission contributing to the damages, if any, of the plaintiffs.

6. In this respect this defendant specially excepts to the plaintiffs petition and asks for a bill of particulars specifying precisely in what ways the crew was inadequate, in what way the crew was not properly trained, in what dangerous conditions are referred to in nature and kind of "inexperienced" persons aboard and what experience they lacked that they should have had, in what way the vessel or its crew was unseaworthy and how each of these were a contributing cause, if any, to the claims of injury filed by the plaintiffs.

7. This defendant objects to the general allegation of other acts and omissions to be specified later and requests a bill of particulars in a timely fashion regarding such allegations.

8. This defendant further objects to the repeated general allegation of unseaworthiness

G:\stat1\docs\dolphin.doc\leoprd-2.000\luke-dba.ans(pc)   3

and requests a bill of particulars as to what way it was unseaworthy and how such alleged unseaworthiness was a contributing or proximate cause of any loss or damages to the plaintiffs.

**6**

9.  This defendant denies that it was engaged in or guilty of any acts or omissions that brings it withing the Texas Deceptive Trade Practice-Consumer Protection Act and objects to the general description of the matters it intends to rely upon and asks for a bill of particulars as to each and every false, misleading, deceptive act or practice or unconscionable action or breach of warranty or material misrepresentation it intends to rely upon under Texas B & C 17.46 et seq.

10. This defendant shows that when the Coast Guard arrived to effect the removal of Traci Leopard, its understanding was that the Coast Guard was in command of the vessel and to the extent any of its commands caused any loss, damage or injury to the plaintiffs, the sole responsibility for any loss or injury would be the burden of the Coast Guard who had total command. This defendant denies any liability for any acts or injuries that occurred while the Coast Guard was in charge of the rescue.

**7**

11. In reference to the allegations in paragraph 7 of the petition, this party neither admits or denies such allegations because they're matters that are not within its present knowledge and leaves the plaintiff to its proof regarding such matters and demands strict proof thereof insofar as they may relate to any responsibility, liability or cause for which this defendant is responsible.

**8**

12. This defendant neither admits or denies the allegations contained in paragraph 8 of the petition other than to repeat that it has been guilty of no act or omission by which it is responsible for any loss or damage suffered by said plaintiff.

**9**

13. This defendant neither admits or denies that the action is brought pursuant to Title 46, Section 688, et seq. or in pursuant of general civil maritime law except as to deny liability as to the plaintiffs on any basis and leaves the plaintiffs to their proof in this matter.

**10**

14. This defendant denies that it has any liability to the plaintiffs for prejudgment interests, medical expenses, physical pain and suffering, mental anguish, loss of earnings or any other element of damage.

15. PREMISES CONSIDERED, the defendant, Dean K. Luke, Individually, moves that he be dismissed from this suit at the earliest possible time and the loss, cost and expense suffered by him for being added to the suit be charged against the plaintiffs, including his attorney's fees and other damages. That he be reimbursed for the cost of requiring an answer for nonexistent beings which was well within his knowledge at the time he filed this suit and he should be sanctioned for adding the expense to the defense of the cases for adding such nonexistent parties.

16. That as to the liability of Barracuda, Incorporated, that the plaintiffs take nothing in their suit against it and that it go hence with its cost and all other proper relief.

G:\stat1\docs\dolphin.doc\leoprd-2.000\luke-dba.ans(pc)  5

17    That the plaintiffs take nothing against their suit against the defendants answering in this response. That these defendants go hence with their cost and all other proper relief.

Respectfully submitted,

BOB J. SPANN & ASSOCIATES
1109 Santa Fe (78404
P.O. Box 3039
Corpus Christi, Tx. 78463-3039
Telephone No.: (512)884-8221
Facsimile No.: (512)884-8533

BY: _____
BOB J. SPANN
State Bar No.: 18873000

## CERTIFICATE OF SERVICE

I, **BOB J. SPANN**, do hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record via certified mail on this the 17th day of April, 2000.

BY: _____
BOB J. SPANN
State Bar No.: 18873000

**CERTIFIED MAIL:** Z 208 461 893
Mr. Joe Fisher, II,
**PROVOST & UMPHREY LAW FIRM, L.L.P.**
P.O. Box 4905
Beaumont, Tx. 77704-4905
Telephone No.: (409)835-6000
Facsimile No.:(409)838-8888

**CMRRR NO.: Z208461897**
Mr. James H. DeAtley,
United States Attorney
910 Travis Street, Suite 1500
Houston, Texas 77002

G:\stat1\docs\dolphin.doc\leoprd-2.000\luke-dba.ans(pc)   6

# BAREBOAT CHARTER AGREEMENT

AGREEMENT OF VESSEL __Dolphin Express__ OFFICIAL NO __587429__

This Charter Party is made this __1st__ day of __Jan 1998__

between __Dolphin Express, Inc.__ a Texas Corporation, hereinafter called OWNER, and Barracuda Inc. hereinafter called CHARTERER.

I

OWNER hereby lets and demises Bareboat and CHARTERER hereby hires for the period of time and upon the terms and provisions hereinafter set out, the vessel __m/v Dolphin Express__ official number __587429__

II

The said vessel shall be delivered to CHARTERER on or about __Jan 1, 1998__ afloat at __Port Aransas, Tx USA__. The charter of this vessel under this Agreement shall be for an original period of __12 months__ from the day of this Charter, as hereinafter provided, and from month to month thereafter until this Charter is canceled as herein provided. Either party shall have the privilege of canceling this Charter at the end of the original Charter period or at the end of any calendar month thereafter upon giving notice to the other party in writing of its desire to terminate the Charter, such notice to be given at least ten (10) days or more in advance of the original Charter period or the end of any such calendar month thereafter. This Charter may be terminated at the end of any such calendar month during the original Charter period if both parties are in full

-1-

Exhibit "A"

agreement to such.

III

The vessel shall be delivered by OWNER in good and seaworthy condition to and accepted by CHARTERER at <u>Port Aransas, Tx USA</u> and on delivery, it shall be staunch, tight and well and sufficiently appareled and equipped and shall, in every respect, be seaworthy and in good running order, condition and repair so far as the exercise of due diligence can make said vessel. It shall have, in effect, as required, the appropriate United States Certificate of Documentation as issued by the United States Coast Guard. There shall be on board the vessel all certificates and documents necessary for the contemplated service of the vessel. The acceptance of delivery of said vessel by CHARTERER shall constitute an acknowlgement of full performance by OWNER of OWNERS' obligation relating to the delivery of the vessel hereunder and thereafter CHARTERER shall not be entitled to assert any claim against OWNER on account of any warranty or representation with respect to said vessel, except that OWNER shall be responsible for repairs or renewals occasioned by laten defects in the vessel or her machinery or appurtenances existing at the time of delivery.

IV

At the expiration of the Charter, the vessel shall be delivered to OWNER (unless lost) at <u>Port Aransas, Tx USA</u> in the same good running order, condition and repair in which she was when delivered.

V

The vessel shall be employed only in the fishing trade, Without permission of OWNER, the vessel shall not be employed in the carriage of persons or goods for hire or in the carriage of freight for any person other than CHARTERER.

If any radios are presently on the vessel, the same shall not be used by CHARTERER unless and until CHARTERER secure licenses from the Federal Communications Commission to operate such radios and comply with all laws and regulations in connection with operation of same.

VI

CHARTERER shall, at their own expense, man, operate, navigate, fuel, maintain and supply the vessel and shall pay and provide for all fuel, port charges, repairs and other charges and expenses whatsoever connected with the use or operation of the vessel, except such as may be expressly imposed on OWNER by this Charter.

However, OWNER is interested in the proper maintenance of the hull and machinery of the vessel and CHARTERER agrees that OWNER may have inspectors and other representatives on board the vessel at such time or times as OWNER shall select, provided, however, that such persons shall not exercise any control over, or interfere with any of the rights and privileges of CHARTERER with respect to said vessel during the period of this Charter; that the CHARTERER has exclusive possession, control and command and that the rights of OWNER and its representatives are only of Observation.

-3-

## VII

As hire for the said vessel, CHARTERER shall pay to OWNER at 5756 S Staples Corpus Christi TX or at such other place or places as OWNER may, from time to time direct in writing, payable as follows: ( $ 1250.00 ) per month.

## VIII

At the time of acceptance of delivery of the vessel, a complete inventory of the vessel's equipment, including spares, and all consumable stores and fuel shall be taken and mutually agreed upon and that at the time of redelivery of the vessel, a similar inventory shall be taken. All of the vessel's equipment, including spares, shall be returned to OWNER on redelivery in the same good condition and order as when received.

## IV

Neither the CHARTERER nor the master nor any of the vessel's officers, employees or agents or any other member of the crew shall have any power or authority to impose any lien on the vessel for fuel, supplies, repairs or other necessaries, except for crew's wages and salvage.

CHARTERER agrees to carry a properly certified copy of this Charterer with the vessel's papers on board the vessel and also to keep a copy in CHARTERERS' office and to exhibit or cause to be exhibited a copy of this Charter to any person, firm or corporation having business with the vessel which might give rise to any lien thereon, other than for crew's wages and salvage and to notify all such persons, firms and corporations that neither the CHARTERER nor the master nor any of the crew has any right to create, incur or permit

-4-

to be imposed on the vessel any such lien. CHARTERER shall at all times keep on exhibit in the pilot house of the vessel a printed notice to the effect that the vessel is the property of OWNER and that no other than the OWNER has any right to create, incur or permit to be placed on the vessel any maritime or other lien, except for crew's wages and salvage.

X

CHARTERER hereby agrees to indemnify OWNER against any lien or claim which is actually for CHARTERERS' account and for which may be asserted against the vessel or OWNER, and CHARTERER agrees, at its own cost and expense, to protect the vessel and OWNER against any such liens. CHARTERER agrees to indemnify and hold OWNER harmless against all claims arising out of the use or operation of the vessel by CHARTERER or out of any act or neglect of CHARTERER in relation to the said vessel. If a complaint shall be filed against or taken into custody by virtue of legal proceedings in any Court, CHARTERER shall, within ten (10) days thereof, cause the vessel and the lien to be discharged.

XI

During the term, CHARTERER shall, at their expense, keep the vessel insured under usual forms of marine insurance hull policies in a sum not less than $ N/A and also under usual forms of protection and indemnity policies in a sum not less than $ N/A the protection and indemnity risks shall include claims of crew member, compensation, longshoremen and harbor workers liability, and tower's liability risk if the vessel performs

-5-

towage. All such insurance may provide for deductibles not to exceed $ __N/A__ for which deductible Charterer shall stand as insured. All insurance shall be taken out in the names of both CHARTERER and OWNER and shall, buy its terms, be payable to OWNER for the account of CHARTERER and OWNER as their respective interests may appear. The forms of policy and the underwriters shall be subject to OWNERS' approval. All policies shall be delivered to OWNER with evidence satisfactory to OWNER that all premiums and other charges therefor have been fully paid. Underwriters shall be notified to agree reasonably in advance to notify OWNER of any cancellation of, or material change in, any insurance unimpaired by any act, breach of warranty, or otherwise.

XII

If CHARTERER shall fail to pay any monthly installment of rental when due or fail to keep or to perform by of their other obligations or shall violate any of the provisions imposed upon them under this Charter or if CHARTERER shall make a general assignment for the benefit of creditors, or if a receiver of any kind shall be appointed for CHARTERER or for CHARTERERS', business, or If CHARTERER shall be adjudged bankrupt or file or have filed against them a petition in bankruptcy, or for the reorganization of any other proceeding under any of the provisions of the Bankruptcy Code, then in any event, OWNER may, without prejudice to any other rights which they may have under this Charter, retake the vessel wherever the same may be found, weather upon the high seas or in any port or other place, and without prior demand and without legal process, may enter upon any pier, dock or other place where the vessel may be and retake possession thereof.

XIII

If, during the period of this Charter, the United States or any department or agency thereof, shall requisition, commandeer or otherwise take possession of this vessel, this Charter shall thereupon terminate.

XIV

All salvage and salvage towage shall be one-fourth (1/4) for OWNER and three-fourths (3/4) for CHARTERERS' benefit after allowance of proper expenses and purporation of hire. The general average, If any, shall be adjusted and payable according to the York-Antworp Rules, 1950, and as to matters not provided for therein, according to the laws and usages of the Port of New York.

XV

Any state or federal tax ( other than Income taxes payable by OWNER on the Charter hire) which may be or become payable by OWNER or CHARTERER with respect to any use made of the vessel hereunder, or with respect to The making of the CHARTERER shall be paid by CHARTERER.

XVI

CHARTERER shall not sublet the said vessel or assign this Charter or any Interest therein without the prior written consent of OWNER.

-7-

XVII

To be exercised at any time on and prior to the last day of the term of this Charter. CHARTER shall have the option to purchase the vessel, and its tackle, apparel, furniture and appurtenances, by paying a purchase price of $ _N/A_ . If the CHARTER exercises this option, OWNER shall give CHARTERER credit against such purchase price for all sums theretofore paid as rent hereunder and also the sum paid, if any, on the signing of this Charter. This option shall be exercised only by notice to OWNER together with a tender of the amount necessary to complete The purchase. Should CHARTER exercise their option then OWNER will, with reasonable expedition, execute and deliver to CHARTER a good and sufficient bill of sale, in duplicate, transferring title to said vessel free of all liens and encumbrances created by OWNER, failing in which CHARTERER shall be entitled to specific performance. Should CHARTER fail to exercise The option on or before the last day of the term, then the option shall be of no further force or effect.

XVII

Any notice given or required to be given hereunder shall be in writing and shall be mailed by certified United States Mail, Return Receipt Requested, and addressed to the appropriate party at the following addresses. Any notices so mailed shall be deemed to be received upon deposit of the same in the United States Mail:

TO OWNER: _Dolphin Express, Inc_

TO CHARTERER: _~~~~~~~~~ Inc._

-8-

IN WITNESS WHEREOF, this charter has been executed in multiple copies, each of which shall be deemed to be an original by the respective parties hereto on the day and year first above written.

OWNER: _Dolphin Express Inc._

BY: _[signature]_

TITLE: _Vice-President_

CHARTERER: _Barracuda Inc._

BY: _Dean K. Luke_

TITLE: _President_

-9-

Modifications

1. Section II added ( This Charter may be terminated at the end of any such calendar month during the original Charter period if both parties are in full agreement to such.)

-10-