IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

APR 28 2000

Michael N. Milby, Clerk

| | | |
|---|---|---|
| TRACI LEOPARD AND BRYAN LEOPARD | § § § | |
| PLAINTIFFS | § | |
| VS. | § | C.A. NO. C-00-115 |
| | § | |
| DOLPHIN DOCK, INC., ET AL | § | |
| DEFENDANTS | § | |

## ANSWER OF DOLPHIN EXPRESS, INC.

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Dolphin Express, Inc. and answering the summons served upon it respectfully shows:

**1**

1. Defendant neither admits or denies the suit that is alleged against it is a maritime claim within the meaning of Rule 9(h) and leaves that proof to the plaintiff. This defendant shows that it merely owns the boat that's called MV Dolphin Express, which it leases by a bare boat charter to Barracuda, Inc. a Texas corporation. A copy of the charter is attached and this defendant believes that this connection does not make it a maritime claim or admiralty claim and ask that it be dismissed from this action.

**2**

2. Dolphin Express, Inc. is a Texas corporation with its principal office and place of business in Texas and service upon it in connection with this case may be obtained upon its undersigned counsel of record.

G:stat1\docs\dolphin.doc\leoprd-2.000\dol-expr.ans(pc)  1

**3**

3.     This defendant has no connection with the activities of March the 28th, 1998 as alleged in the petition, did not book Traci Leopard and Bryan Leopard aboard the Dolphin Express. Did not have any agents aboard the boat. It being wholly under the control of Barracuda, Incorporated, a Texas corporation and accordingly denies that it has any obligation or liability to the plaintiffs arising out of the events alleged and moves that it be dismissed from this lawsuit as expeditiously as possible.

**4**

4.     Answering the allegations contained in paragraph 4 against the defendants generally, this defendant denies it was guilty of any of the specific acts alleged and or that it was negligent generally in any respect or that any acts or omissions of it were the proximate or producing cause of any loss or damage to the plaintiffs.

**5**

5.     This defendant further denies that the vessel was unseaworthy in any respect and further that if it was in any respect unseaworthy such was not the producing or proximate cause of any loss or damage to the plaintiffs or that the ships crew or others were guilty of any negligence that was the proximate cause, but nevertheless, all of such were outside the control of this defendant, which had by bare boat charter leased the vessel wholly and entirely to Barracuda, Inc. and retained no right of control and exercised no control whatsoever on the occasion in question.

6.     This defendant denies all of the allegations contained in paragraph 5 alleging it to be guilty of the Deceptive Trade Practice-Consumer Protection Act and although it denies

it has any liability therefore, nevertheless, specifically excepts to the allegations 1 through 5 because they are general, wholly uninformative and failed to state any cause of action against Dolphin Express, Inc. or for that matter against anyone.

**6**

7.      This defendant responding to paragraph 6 of this complaint shows that it was not present, was not represented by any agent, servant or representative. Neither admits or denies the allegations against the Coast Guard or its causation, if any, regarding the claimed injuries of the plaintiff.

**7**

8.      In response to this paragraph of the complaint, this defendant neither admits nor denies the allegations because of lack of information. Reserves the right if in fact there's any theory under which it would be liable for their alleged losses to contest the nature, extent and amounts claimed thereunder.

**8**

9.      In regards to this allegation, this defendant neither admits or denies such general allegations and reserves the right to defend against them if that in fact becomes necessary.

**9**

10.     This defendant neither admits or denies that the action is brought pursuant to the provisions of Title 46, Section 688, et seq. USCA as well and pursuant to the general civil and maritime law. In view of the fact that the boat was leased out without any retention of any control or management of it, this defendant fails to see how it has any liability and moves that this case be dismissed as to it.

G:\stat1\docs\dolphin.doc\leoprd-2.000\dol-expr.ans(pc)          3

10

11.  This defendant denies any liability for any damages and also that it is liable for prejudgment interest on any basis.

12.  PREMISES CONSIDERED, this defendant prays that it be dismissed from this action and that it recover all of its cost and expense involved in requiring to appear and answer herein.

Respectfully submitted,

**BOB J. SPANN & ASSOCIATES**
1109 Santa Fe (78404
P.O. Box 3039
Corpus Christi, Tx. 78463-3039
Telephone No.: (512)884-8221
Facsimile No.: (512)884-8533

BY: _____
BOB J. SPANN
State Bar No.: 18873000
Federal Admissions # - 2215
ATTORNEY IN CHARGE FOR:
DOLPHIN EXPRESS, INC.

### CERTIFICATE OF SERVICE

I, **BOB J. SPANN**, do hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record via certified mail on this the 28th day of April, 2000.

BY: _____
BOB J. SPANN
State Bar No.: 18873000
Federal Admissions # - 2215
ATTORNEY IN CHARGE FOR:
DOLPHIN EXPRESS, INC.

G:\stat1\docs\dolphin.doc\leoprd-2.000\dol-expr.ans(pc)      4

**CERTIFIED MAIL:** **Z 208 461 876**
Mr. Joe Fisher, II,
**PROVOST & UMPHREY LAW FIRM, L.L.P.**
P.O. Box 4905
Beaumont, Tx. 77704-4905
Telephone No.: (409)835-6000
Facsimile No.:(409)838-8888

**CMRRR NO.: Z 208 461 877**
Mr. James H. DeAtley,
United States Attorney
910 Travis Street, Suite 1500
Houston, Texas 77002

A

# BAREBOAT CHARTER AGREEMENT

AGREEMENT OF VESSEL __Dolphin Express__ OFFICIAL NO __387429__

This Charter Party is made this __1st__ day of __Jan 1998__

between __Dolphin Express, Inc.__ a Texas Corporation, hereinafter called OWNER, and Barracuda Inc. hereinafter called CHARTERER.

I

OWNER hereby lets and demises Barebcat and CHARTERER hereby hires for the period of time and upon the terms and provisions hereinafter set out, the vessel __m/v Dolphin Express__ official number __587429__

II

The said vessel shall be delivered to CHARTERER on or about __Jan 1, 1998__ afloat at __Port Aransas, Tx USA__. The charter of this vessel under this Agreement shall be for an original period of __12 months__ from the day of this Charter, as hereinafter provided, and from month to month thereafter until this Charter is canceled as herein provided. Either party shall have the privilege of canceling this Charter at the end of the original Charter period or at the end of any calendar month thereafter upon giving notice to the other party In writing of its desire to terminate the Charter, such notice to be given at least ten (10) days or more in advance of the original Charter period or the end of any such calendar month thereafter. This Charter may be terminated at the end of any such calendar month during the original Charter period if both parties are in full

-1-

agreement to such.

### III

The vessel shall be delivered by OWNER in good and seaworthy condition to and accepted by CHARTERER at _Port Aransas, Tx USA_ and on delivery, it shall be staunch, tight and well and sufficiently appareled and equipped and shall, in every respect, be seaworthy and in good running order, condition and repair so far as the exercise of due diligence can make said vessel. It shall have, in effect, as required, the appropriate United States Certificate of Documentation as issued by the United States Coast Guard. There shall be on board the vessel all certificates and documents necessary for the contemplated service of the vessel. The acceptance of delivery of said vessel by CHARTERER shall constitute an acknowigement of full performance by OWNER of OWNERS' obligation relating to the delivery of the vessel hereunder and thereafter CHARTERER shall not be entitled to assert any claim against OWNER on account of any warranty or representation with respect to said vessel, except that OWNER shall be responsible for repairs or renewals occasioned by latent defects in the vessel or her machinery or appurtenances existing at the time of delivery.

### IV

At the expiration of the Charter, the vessel shall be delivered to OWNER (unless lost) at _Port Aransas, Tx USA_ in the same good running order, condition and repair in which she was when delivered.

-2-

V

The vessel shall be employed only in the fishing trade, Without permission of OWNER, the vessel shall not be employed in the carriage of persons or goods for hire or in the carriage of freight for any person other than CHARTERER.

If any radios are presently on the vessel, the same shall not be used by CHARTERER unless and until CHARTERER secure licenses from the Federal Communications Commission to operate such radios and comply with all laws and regulations in connection with operation of same.

VI

CHARTERER shall, at their own expense, man, operate, navigate, fuel, maintain and supply the vessel and shall pay and provide for all fuel, port charges, repairs and other charges and expenses whatsoever connected with the use or operation of the vessel, except such as may be expressly imposed on OWNER by this Charter.

However, OWNER is interested in the proper maintenance of the hull and machinery of the vessel and CHARTERER agrees that OWNER may have inspectors and other representatives on board the vessel at such time or times as OWNER shall select, provided, however, that such persons shall not exercise any control over, or interfere with any of the rights and privileges of CHARTERER with respect to said vessel during the period of this Charter; that the CHARTERER has exclusive possession, control and command and that the rights of OWNER and its representatives are only of Observation.

-3-

VII

As hire for the said vessel, CHARTERER shall pay to OWNER at 5756 S Staples Corpus Christi TX or at such other place or places as OWNER may, from time to time direct in writing, payable as follows: ($ 1250.00) per month.

VIII

At the time of acceptance of delivery of the vessel, a complete inventory of the vessel's equipment, including spares, and all consumable stores and fuel shall be taken and mutually agreed upon and that at the time of redelivery of the vessel, a similar inventory shall be taken. All of the vessel's equipment, including spares, shall be returned to OWNER on redelivery in the same good condition and order as when received.

IV

Neither the CHARTERER nor the master nor any of the vessel's officers, employees or agents or any other member of the crew shall have any power or authority to impose any lien on the vessel for fuel, supplies, repairs or other necessaries, except for crew's wages and salvage.

CHARTERER agrees to carry a properly certified copy of this Charter with the vessel's papers on board the vessel and also to keep a copy in CHARTERERS' office and to exhibit or cause to be exhibited a copy of this Charter to any person, firm or corporation having business with the vessel which might give rise to any lien thereon, other than for crew's wages and salvage and to notify all such persons, firms and corporations that neither the CHARTERER nor the master nor any of the crew has any right to create, incur or permit

-4-

to be imposed on the vessel any such lien. CHARTERER shall at all times keep on exhibit in the pilot house of the vessel a printed notice to the effect that the vessel is the property of OWNER and that no other than the OWNER has any right to create, incur or permit to be placed on the vessel any maritime or other lien, except for crew's wages and salvage.

X

CHARTERER hereby agrees to indemnify OWNER against any lien or claim which is actually for CHARTERERS' account and for which may be asserted against the vessel or OWNER, and CHARTERER agrees, at its own cost and expense, to protect the vessel and OWNER against any such liens. CHARTERER agrees to indemnify and hold OWNER harmless against all claims arising out of the use or operation of the vessel by CHARTERER or out of any act or neglect of CHARTERER in relation to the said vessel. If a complaint shall be filed against or taken into custody by virtue of legal proceedings in any Court, CHARTERER shall, within ten (10) days thereof, cause the vessel and the lien to be discharged.

X

During the term, CHARTERER shall, at their expense, keep the vessel insured under usual forms of marine insurance hull policies in a sum not less than $ N/A and also under usual forms of protection and indemnity policies in a sum not less than $ N/A the protection and indemnity risks shall include claims of crew member, compensation, longshoremen and harbor workers liability, and tower's liability risk if the vessel performs

-5-

towage. All such insurance may provide for deductibles not to exceed $ _N/A_ for which deductible Charterer shall stand as insured. All insurance shall be taken out in the names of both CHARTERER and OWNER and shall, buy its terms, be payable to OWNER for the account of CHARTERER and OWNER as their respective interests may appear. The forms of policy and the underwriters shall be subject to OWNERS' approval. All policies shall be delivered to OWNER with evidence satisfactory to OWNER that all premiums and other charges therefor have been fully paid. Underwriters shall be notified to agree reasonably in advance to notify OWNER of any cancellation of, or material change in, any insurance unimpaired by any act, breach of warranty, or otherwise.

XIII

If CHARTERER shall fail to pay any monthly installment of rental when due or fail to keep or to perform by of their other obligations or shall violate any of the provisions imposed upon them under this Charter or if CHARTERER shall make a general assignment for the benefit of creditors, or if a receiver of any kind shall be appointed for CHARTERER or for CHARTERERS', business, or if CHARTERER shall be adjudged bankrupt or file or have filed against them a petition in bankruptcy, or for the reorganization of any other proceeding under any of the provisions of the Bankruptcy Code, then in any event, OWNER may, without prejudice to any other rights which they may have under this Charter, retake the vessel wherever the same may be found, weather upon the high seas or in any port or other place, and without prior demand and without legal process, may enter upon any pier, dock or other place where the vessel may be and retake possession thereof.

-6-

XIII

If, during the period of this Charter, the United States or any department or agency thereof, shall requisition, commandeer or otherwise take possession of this vessel, this Charter shall thereupon terminate.

XIV

All salvage and salvage towage shall be one-fourth (1/4) for OWNER and three-fourths (3/4) for CHARTERERS' benefit after allowance of proper expenses and purporation of hire. The general average. If any, shall be adjusted and payable according to the York-Antwerp Rules, 1950, and as to matters not provided for therein, according to the laws and usages of the Port of New York.

XV

Any state or federal tax ( other than Income taxes payable by OWNER on the Charter hire) which may be or become payable by OWNER or CHARTERER with respect to any use made of the vessel hereunder, or with respect to The making of the CHARTERER shall be paid by CHARTERER.

XVI

CHARTERER shall not sublet the said vessel or assign this Charter or any Interest therein without the prior written consent of OWNER.

-7-

XVII

To be exercised at any time on and prior to the last day of the term of this Charter, CHARTER shall have the option to purchase the vessel, and its tackle, apparel, furniture and appurtenances, by paying a purchase price of $ _N/A_ . If the CHARTER exercises this option, OWNER shall give CHARTERER credit against such purchase price for all sums theretofore paid as rent hereunder and also the sum paid, if any, on the signing of this Charter. This option shall be exercised only by notice to OWNER together with a tender of the amount necessary to complete The purchase. Should CHARTER exercise their option then OWNER will, with reasonable expedition, execute and deliver to CHARTER a good and sufficient bill of sale, in duplicate, transferring title to said vessel free of all liens and encumbrances created by OWNER, failing in which CHARTERER shall be entitled to specific performance. Should CHARTER fail to exercise The option on or before the last day of the term, then the option shall be of no further force or effect.

XVII

Any notice given or required to be given hereunder shall be in writing; and shall be mailed by certified United States Mail, Return Receipt Requested, and addressed to the appropriate party at the following addresses. Any notices so mailed shall be deemed to be received upon deposit of the same in the United States Mail:

TO OWNER: _Dolphin Express Inc_

TO CHARTERER: _____ Inc._

-8-

IN WITNESS WHEREOF, this charter has been executed in multiple copies, each of which shall be deemed to be an original by the respective parties hereto on the day and year first above written.

OWNER: _Dolphin Express Inc._

BY: _[signature]_

TITLE: _Vice-President_

CHARTERER: _Barracuda Inc._

BY: _[signature] Dean X Luke_

TITLE: _President_

Modifications

1. Section II added ( This Charter may be terminated at the end of any such calendar month during the original Charter period if both parties are in full agreement to such.)

-10-