United States District Court
Southern District of Texas
FILED

AUG 1 6 2000

MICHAEL N. MILBY, CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

TRACI LEOPARD AND BRYAN          *
LEOPARD

VS.                              *          CIVIL ACTION NO.: C-00-115

DOLPHIN DOCK, INC., ET AL        *

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs in the above styled cause and hereby files Plaintiffs' Response to Defendants' Motion for Summary Judgment.

### Plaintiffs Have a Cause of Action Against Dolphin Express Inc.

Attached hereto and labeled Exhibit 1 is Plaintiffs' Original Complaint. In this Petition, Plaintiffs have asserted a cause of action against Dolphin Express Inc. for unseaworthiness. In essence, the only basis for defendant's motion for Summary Judgment is that the "Dolphin Express" was bareboat chartered to Barracuda Inc. and therefore, has no liability for the vessel's unseaworthiness. The defendant has admitted that it was the owner of the vessel, and has not challenged the Plaintiff's claim that the vessel was unseaworthy. The mere fact that the vessel had been chartered to another company does not in and of itself absolve the vessel owner from liability. The Fifth Circuit has addressed this very issue in the context of an injured seaman. In fact, the Fifth Circuit specifically held that a bareboat or demise charter does not absolve the owner of liability. **In fact, the Court specifically stated that: "a seaman should not be forced to speculate on when the unseaworthy condition of a vessel arose or whether**

1

62.

a valid Bareboat charter existed.  Rather, the allocation of ultimate liability should be the responsibility of the owner and charterer, who can sort out which between them will bear the final cost of recovery." *Baker v. Raymond International, Inc.,* 656 F.2d 173, 184 (5th Cir. 1981).  Clearly, this case is analogous to the <u>Baker</u> case.

Furthermore, the Defendant, Dolphin Express Inc. has not proven that a true bareboat or demise charter existed at the time of the incident made the basis of this suit. The factors to be considered regarding whether a bareboat charter existed are clear.  A bareboat charter is created when the owner of the vessel…completely and exclusively relinquishes possession, command and navigation thereof to the demisee. However, anything short of such a complete transfer is a time or voyage charter party or not a charter party at all. *Guzman v. Pichirilo, 369 U.S. 698, 699-700, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962).*  The test for establishing a bareboat charter is one of control. *Carolina Seafoods, Inc., v. United States, 581 F.2d 1098, 1100 (4th Cir. 1978).*  The rule recognizes that when the owner of the vessel enters into a demise charter, he surrenders all possession and control of the vessel to the charterer. *Kerr-McGee Corp. v. Law, 479 F.2d 61, 63 (4th Cir. 1973).*  The lease, made the subject of the defendant's motion, does not relinquish absolute control of the vessel to Barracuda Inc.  Furthermore, even if it could be argued that it does, this is a fact question for the jury to determine.

Attached hereto and labeled Exhibit 2 is the lease between the Defendant and Barracuda Inc.  In section V of the lease, the defendant, Dolphin Express Inc. specifically retains the right to direct how the boat is to be used, whether the boat may carry passengers for hire, and specifically forbids the charterer from using the radio equipment on board the vessel.  Furthermore, in section VI of the lease, Dolphin Express Inc.

2

specifically reserves the right to inspect the boat and come aboard the boat at the owner's discretion. As further evidence that the Dolphin Express has not relinquished control, section XVI of the lease, forbids the charterer from sub-chartering or assigning any interest in the vessel without the owner's consent. Finally, the Courts have held that it is proper to look to the relationship and dealings of the parties in determining whether a Bareboat or demise charter exists. Clearly, if the intention of the owner was to relinquish absolute control over the vessel in a valid bareboat charter, the lease would have provided for the charterer to maintain appropriate insurance on the vessel. Ironically, the charter attached as exhibit 2 is blank regarding this issue.

The fact of the matter is, under current law, the owner of a vessel can be held liable and properly sued for the unseaworthiness of its vessel even when a bareboat charter exists. Furthermore, the case law is clear, that even in a bareboat charter situation, the owner, Dolphin Express Inc., may be held liable for the unseaworthiness of the vessel if the unseaworthiness of the vessel existed at the time of the delivery of the vessel. *Kerr-McGee Corp. at 62.* Finally, and with regard to the defendant's apparent plea for Rule 13 sanctions, the case law stated above as well as general pleading rules, allow the plaintiffs to plead their cases in the alternative. Clearly, the Plaintiffs are allowed to plead and attempt to prove that there was not a bareboat charter.

The defendant, Dolphin Express Inc. has not challenged nor moved for summary judgment on the issue of whether the vessel was unseaworthy before or after the vessel was delivered to Barricuda Inc., therefore, plaintiffs have no burden of proof on this issue for purposes of this motion.

3

## II.

**The Plaintiffs can maintain a Cause of Action Against Dolphin Dock, Inc. for Violations of the Texas Deceptive Trade Practices Act**

Dolphin Dock Inc. has not properly moved for summary judgment on Plaintiffs' D.T.P.A. claims.   In fact, only one sentence of this Defendant's motion even addresses these claims, and merely states that the claims are invalid.   In spite of the improper motion, Plaintiffs respond as follows:

The Texas Business and Commerce Code clearly provides for liability in a situation such as the incident made the basis of this suit.   Specifically, section 17.46 of the code provides a laundry list of actions or courses of actions under which a provider of goods or services may be held liable to a consumer.   This laundry list includes but is not limited to the following:

1. Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

2. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

3. Representing that goods or services are of a particuliar standard, quality, or grade;

4. Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into the transaction which the consumer would not have entered into had the information been disclosed

Clearly, Plaintiffs may maintain a cause of action under any one of these violations.

Attached hereto and labeled Exhibit 3 are two pages of advertisements by the Defendant, Dolphin Docks, in which it induces consumers into the very transaction made the basis of

this suit. In these advertisements, the Defendant Dolphin Docks, specifically represents to the public that it is the operator and owner of the fishing services being offered. Furthermore, the advertisements specifically refer to Dean Luke, who was the captain of the trip made the basis of this suit, as having been a "Dolphin Dock captain for six years." The advertisement further states and represents that that the vessel the "Dolphin Express" is a Dolphin Dock vessel. In addition to the above, attached hereto and labeled as exhibit 4 is the deposition testimony of Bryan Leopard. He specifically testifies that this trip was booked through Dolphin Docks and that the money paid for the trip was paid to Dolphin Docks. (Please see deposition testimony of Brian Leopard p.8, l. 2-6 attached hereto as exhibit 4) This evidence is clearly sufficient to raise a fact issue as to the elements of a D.T.P.A. cause of action. That is, that the plaintiffs were consumers of a service provided by Dolphin Docks, and that Dolphin Docks made material misrepresentations about said service.

Attached hereto and labeled Exhibit 5 is further deposition testimony of Bryan Leopard regarding the information which they did not receive. Specifically, Mr. Leopard testifies that if Dolphin Docks had told them how rough the seas were, he and his wife would not have gone on the trip. (Please see deposition testimony of Bryan Leopard p. 43 attached hereto as Exhibit 5). This testimony in and of itself, creates a fact question regarding section 23 of 17.46 of the business and commerce code listed as number 5 above.

Finally, pursuant to section 17.50 of the Business and Commerce Code, a defendant may be held liable for unconscionable actions or courses of actions. As testified to by Traci Leopard, about thirty minutes into the trip, she became violently ill,

began shaking all over, and requested that the deckhand ask the captain to turn around. (Please see deposition of Traci Leopard pp. 56-57 attached hereto as Exhibit 6)  The fact that the captain refused, and Traci ultimately required air lifting from the Coast Guard, is some evidence upon which a jury could base a finding of unconscionable conduct. Furthermore, a jury could find it unconscionable that the Defendant, Dolphin Docks, would take money for a fishing trip, and fail to inform the consumer of the turbulent weather conditions.

### III.

### Conclusion

The Defendant has failed to properly defeat and/or raise a "no evidence" motion for any one of the elements of Plaintiffs' claims.  In fact, the Defendants merely allege to the Court that there existed a bareboat charter and therefore as a matter of law, Dolphin Express Inc., as owner cannot, under any circumstances be liable for its unseaworthiness, and that Dolphin Docks cannot be held liable under the D.T.P.A.  These statements are simply not the law, as discussed above.  In fact, the Defendants have not cited one authority to this Honorable Court in support of their positions.   Furthermore, the Defendants have not challenged, by Summary Judgment, the cause of actions against the remaining defendants, nor have the defendants shown one shred of proof that these defendants have incurred any attorney's fees for any work that Mr. Spann would not have had to do otherwise in his defense of the remaining defendants.  In fact, the only depositions, which have been taken in the present case, are the depositions of the plaintiffs, as well as the depositions of the treating doctors.  These would have been taken anyway.

6

Wherefore, Premises Considered, Plaintiffs pray that this Honorable Court deny Defendants' motions for Summary Judgment and grant Plaintiffs any further relief to which they may show themselves justly entitled.

Respectfully submitted,

PROVOST ★ UMPHREY
LAW FIRM, L.L.P.
490 PARK STREET
P. O. BOX 4905
BEAUMONT, TEXAS 77704
(409) 835-6000
(409) 813-8609 FAX

BY: _____
   Joe J. Fisher, II
   TBA# 00787471
   Southern District Admission
   No.: 25333

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Response to Defendants' Motion for Summary Judgment was forwarded to Defendant counsel via facsimile and U. S. Mail on this 15th day of August, 2000.

_____
Joe J. Fisher II

7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

TRACI LEOPARD AND BRYAN     *
LEOPARD
      PLAINTIFFS

VS           *   C. A. NO _C-00-115_

DOLPHIN DOCK, INC., ET AL    *

      DEFENDANTS

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT·

COMES NOW Traci Leopard, joined by her husband, Bryan Leopard, hereinafter referred to as Plaintiffs, complaining of Dolphin Dock, Inc., Barracuda, Inc., Barracuda Incorporated, Dean K. Luke, individually and d/b/a Barracuda Incorporated, Dolphin Express, Inc Gulley's Diving Service, Inc., and the United States Coast Guard, hereinafter referred to as Defendants, for cause of action would show unto this Honorable Court as follows:

1

This is an admiralty or maritime claim within the meaning of Rule 9(h) under the Federal Rules of Civil Procedure

2

**Defendant, Dolphin Dock, Inc.,** is a corporation organized and existing under and by virtue of the laws of one of the States of these United States, and may be served with process by serving its agent for service, to-wit  Paul D  Dirk, 808 Sea Breeze, Port Aransas, Texas 78373



CutePDF - www.cutepdf.com

**Defendant, Barracuda Inc.** is a corporation organized and existing under and by virtue of the laws of one of the States of these United States, and may be served with process by serving its agent for service, to-wit   Dean K. Luke, 300 W. Cotter, Port Aransas, Texas 78373

**Defendant, Barracuda Incorporated,** is a corporation organized and existing under and by virtue of the laws of one of the States of these United States, and may be served with process by serving its agent for service, to-wit: Dean K. Luke, 300 W. Cotter, Port Aransas, Texas 78373

**Defendant, Dean K. Luke, individually and d/b/a Barracuda Incorporated**, is a corporation organized and existing under and by virtue of the laws of one of the States of these United States, and may be served with process at 310 Reynolds Avenue, Taft, San Patricio County, Texas 78390 and may be served with process at 300 W. Cotter, Port Aransas, Texas 78373

**Defendant, Dolphin Express, Inc.** is a corporation organized and existing under and by virtue of the laws of one of the States of these United States, and may be served with process by serving its agent for service, to-wit:   Charles W. Zahn, 300 W. Cotter, Port Aransas, Texas 78373

**Defendant, Gulley's Diving Service, Inc.** is a corporation organized and existing under and by virtue of the laws of one of the States of these United States, and may be served with process by serving its agent for service, to-wit:   Charles W. Zahn, Jr., 300 W. Cotter, Port Aransas, Texas

**Defendant, United States Coast Guard**, is an agency, branch and/or arm of the United States Government and may be served with process by serving the United States Attorney for the Southern District of Texas, James H. DeAtley, at 910 Travis Street, Suite 1500, Houston, Harris

County. Texas 77002.   Plaintiff further requests that the **Defendant, United States Coast Guard** be served with process by forwarding a copy of the Summons and Complaint by Certified Mail, Return Receipt Restricted to   Attorney General of the United States, Janet Reno at 10th Street & Constitution Avenue , N W., Washington, D.C  20530

3

On or about March 28, 1998, Plaintiff, Traci Leopard was on a chartered fishing trip with Defendants, Dolphin Dock, Inc., Barracuda, Inc.,  Barracuda Incorporated and/or Gulley's Diving Service, Inc., when she became ill from seasickness due to dangerous seas while onboard the vessel "THE DOLPHIN EXPRESS".  While being transported by agents and/or employees of Dolphin Dock, Inc., Barracuda, Inc., Barracuda Incorporated, Gulley's Diving Service, Inc , and/or United States Coast Guard to a rescue helicopter, she sustained severe injuries to her head, face and body   Plaintiffs would show that on the date in question, the vessel,  "THE DOLPHIN EXPRESS", was owned, operated, managed and/or controlled by the Defendant, Dolphin Express, Inc.

4.

The severe and permanent injuries suffered by Plaintiff, Traci Leopard, were negligently caused by the Defendants, working by and through their agents, and/or employees, in one or more of the following particulars, either singularly or in combination:

1   Failing to provide an adequate crew;

2   Failing to properly train the crew,

3   In failing to warn of the dangerous conditions that existed out on the seas;

4   In choosing to embark on the fishing trip, knowing there were inexperienced persons aboard,

5   In failing to provide a safe means of rescue and/or disembarkation.

3

CVAPDF - www.fastio.com

6       Unseaworthiness;

7       In committing various other acts and/or omissions of negligence to be specified at
        the time of trial

Each and all of the foregoing acts of negligence proximately caused or contributed to the

general personal injuries and damages sustained by Plaintiffs.  In addition, but without waiving

the foregoing, Plaintiff's personal injuries and damages were also proximately caused or

contributed to by the unseaworthiness of the vessel, "THE DOLPHIN EXPRESS" in the above

particulars; alternatively, said unseaworthiness played a part in producing the personal injuries

and damages of Plaintiffs.

                                          5

Plaintiff further brings a cause of action against Defendants, Dolphin Dock, Inc., Barracuda,

Inc., Barracuda Incorporated, Dean K. Luke, individually and d/b/a Barracuda Incorporated, and

Gulley's Diving Service, Inc., pursuant to the Texas Deceptive Trade Practices--Consumer

Protection Act in that, these Defendants herein engaged in false, misleading and deceptive acts or

practices, as well as unconscionable actions and courses of actions, breaches of warranty and

material misrepresentations under the terms of the Act hereinabove referred to.  See Texas Business

and Commerce Code, Sections 17 46, et seq.  As a result of such deceptive acts and practices,

Plaintiffs would show that they are entitled to recover three (3) times the amount of their actual

damages, a sum to be determined at the time of trial, plus all costs of court, both pre- and

post-judgment interest, and attorney's fees reasonable in relation to the amount of work expended on

Plaintiffs' behalf

CVisPDF - www.twios.com

Plaintiff would further show that The United States Coast Guard is liable to Plaintiffs pursuant to and according to The Suits in Admiralty Act   Plaintiffs would show that the Coast Guard was negligent in that during the rescue operation, the rescue pilot and/or worker gave the ship erroneous and/or inadequate instructions regarding which heading to take during the rescue operations.  Said negligent act was a proximate and/or producing cause of Plaintiff being thrown face first into the bow of the boat.

7

The injuries which were inflicted upon the Plaintiff, Traci Leopard, were of such severity that she required treatment and/or hospitalization   Plaintiff would further show that she has been forced to take continued medication and treatments, and secure the aid of various physicians, and such has restricted her activities to the extent that she has suffered loss of earnings in the past, and will more likely suffer extensive loss of earning capacity in the future.  The Plaintiff, Traci Leopard, has suffered extreme physical pain and suffering, mental anguish, disfigurement, and impairment in the past, and will likely suffer from these conditions for an undetermined length of time in the future, probably for the rest of her life   Your Plaintiff, in all reasonable probability, will be forced to seek and obtain medical care, assistance, and treatment from time to time in the future, and probably for the rest of her life   Said future medical expenses will be reasonable and necessary and directly attributable to the injuries inflicted upon Plaintiff on the occasion in question

As a result of these personal injuries, Plaintiff has in the past and will, in all reasonable probability, in the future experience physical pain and suffering, mental anguish, and loss of earning and earning capacity, for which she alleges and seeks damages in excess of the minimum

jurisdictional requirements of this Court and in such amount as the evidence may show proper at the time of trial.

8

Pleading further, Plaintiff, Bryan Leopard, hereby sues to recover for loss of household services, loss of consortium, love, solace and affection, in the past, as well as in the future, proximately caused by the incident made the basis of this lawsuit.

9

This action is brought pursuant to the provisions of Title 46, Sec. 688, et seq., U.S.C.A., as well as pursuant to the general civil and maritime law.

10.

Plaintiffs also make claim for pre-judgment interest for all elements of damages, and such elements include, but is not limited to past medical expenses, past physical pain and suffering, past mental anguish, past loss of earnings, or any other proper element of damage where pre-judgment interest may be properly awarded.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein as the law directs, and that upon final hearing hereof, Plaintiffs do have and recover judgment of and from the Defendants in such amounts, pursuant to the foregoing allegations, as the evidence may show proper, together with interest thereon at the legal rate, costs of court, and for such other and further relief, general and special, at law and in equity, to which Plaintiffs may be justly entitled.

CutePDF - www.fasio.com

Respectfully submitted,

PROVOST & UMPHREY
LAW FIRM, L.L.P
P.O. Box 4905
Beaumont, TX  77704-4905
409-835-6000
409-838-8888 (Fax)

By: _____
     JOEL FISHER II
     TBA #: 00787471

## **JURY DEMAND**

Plaintiffs respectfully demand a Jury to try this cause action.

_____
Joe T. Fisher II

## BAREBOAT CHARTER AGREEMENT

AGREEMENT OF VESSEL __Dolphin Express__, OFFICIAL NO __587429__

This Charter Party is made this ___1st___ day of ___Jan 1998___

between ___Dolphin Express, Inc.___ a Texas Corporation, hereinafter called

OWNER, and Barracuda Inc. hereinafter called CHARTERER.


I

OWNER hereby lets and demises Bareboat and CHARTERER hereby hires for

the period of time and upon the terms and provisions hereinafter set out, the vessel

___M/v Dolphin Express___ official number ___587429___


II

The said vessel shall be delivered to CHARTERER on or about __Jan 1, 1998__

afloat at __Port Aransas, Tx USA__ . The charter of this vessel under

this Agreement shall be for an original period of ___12 months___ from the day of this

Charter, as hereinafter provided, and from month to month thereafter until this Charter is

canceled as herein provided.  Either party shall have the privilege of canceling this Charter

at the end of the original Charter period or at the end of any calendar month thereafter

upon giving notice to the other party in writing of its desire to terminate the Charter, such

notice to be given at least ten (10) days or more in advance of the original Charter period

or the end of any such calendar month thereafter.  This Charter may be terminated at the

end of any such calendar month during the original Charter period if both parties are in full

-1-



agreement to such.

III

The vessel shall be delivered by OWNER in good and seaworthy condition to and accepted by CHARTERER at <u>Port Aransas, Tx USA</u> and on delivery, it shall be staunch, tight and well and sufficiently appareled and equipped and shall, in every respect, be seaworthy and in good running order, condition and repair so far as the exercise of due diligence can make said vessel. It shall have, in effect, as required, the appropriate United States Certificate of Documentation as issued by the United States Coast Guard. There shall be on board the vessel all certificates and documents necessary for the contemplated service of the vessel. The acceptance of delivery of said vessel by CHARTERER shall constitute an acknowlgement of full performance by OWNER of OWNERS' obligation relating to the delivery of the vessel hereunder and thereafter CHARTERER shall not be entitled to assert any claim against OWNER on account of any warranty or representation with respect to said vessel, except that OWNER shall be responsible for repairs or renewals occasioned by laten defects in the vessel or her machinery or appurtenances existing at the time of delivery.

IV

At the expiration of the Charter, the vessel shall be delivered to OWNER (unless lost) at <u>Port Aransas, Tx USA</u> in the same good running order, condition and repair in which she was when delivered.

- 3 -

V

The vessel shall be employed only in the fishing trade, Without permission of OWNER, the vessel shall not be employed in the carriage of persons or goods for hire or in the carriage of freight for any person other than CHARTERER.

If any radios are presently on the vessel, the same shall not be used by CHARTERER unless and until CHARTERER secure licenses from the Federal Communications Commission to operate such radios and comply with all laws and regulations in connection with operation of same.

Vi

CHARTERER shall, at their own expense, man, operate, navigate, fuel, maintain and supply the vessel and shall pay and provide for all fuel, port charges, repairs and other charges and expenses whatsoever connected with the use or operation of the vessel, except such as may be expressly imposed on OWNER by this Charter.

However, OWNER is interested in the proper maintenance of the hull and machinery of the vessel and CHARTERER agrees that OWNER may have inspectors and other representatives on board the vessel at such time or times as OWNER shall select, provided, however, that such persons shall not exercise any control over, or interfere with any of the rights and privileges of CHARTERER with respect to said vessel during the period of this Charter; that the CHARTERER has exclusive possession, control and command and that the rights of OWNER and its representatives are only of 'Observation.

VII

As hire for the said vessel, CHARTERER shall pay to OWNER at _3754. 3 Staples_

_Corous Christi. TX_ or at such other place or places as OWNER may, from time to time

· direct in writing, payable as follows: ( $ _1250.00_ ) per month.

VIII

At the time of acceptance of delivery of the vessel, a complete inventory of the vessel's

equipment, including spares, and all consumable stores and fuel shall be taken and

mutually agreed upon and that at the time of redelivery of the vessel, a similar inventory

shall be taken. All of the vessel's equipment, including spares, shall be returned to

OWNER on redelivery in the same good condition and order as when received.

IV

Neither the CHARTERER nor the master nor any of the vessel's officers, employees

or agents or any other member of the crew shall have any power or authority to impose any

lien on the vessel for fuel, supplies, repairs or other necessaries, except for crew's wages

and salvage.

CHARTERER agrees to carry a properly certified copy of this Charterer with the vessel's

papers on board the vessel and also to keep a copy in CHARTERERS' office and to exhibit

or cause to be exhibited a copy of this Charter to any person, firm or corporation having

business with the vessel which might give rise to any lien thereon, other than for crew's

wages and salvage and to notify all such persons, firms and corporations that neither the

CHARTERER nor the master nor any of the crew has any right to create, incur or permit

- 4 -

to be imposed on the vessel any such lien.  CHARTERER shall at all times keep on exhibit in the pilot house of the vessel a printed notice to the effect that the vessel is the property of OWNER and that no other than the OWNER has any right to create, incur or permit to be placed on the vessel any maritime or other lien, except for crew's wages and salvage.

X

CHARTERER hereby agrees to indemnify OWNER against any lien or claim which is actually for CHARTERERS' account and for which may be asserted against the vessel or OWNER, and CHARTERER agrees, at its own cost and expense, to protect the vessel and OWNER against any such liens.  CHARTERER agrees to indemnify and hold OWNER harmless against all claims arising out of the use or operation of the vessel by CHARTERER or out of any act or neglect of CHARTERER in relation to the said vessel.  If a complaint shall be filed against or taken into custody by virtue of legal proceedings in any Court, CHARTERER shall, within ten   (10) days thereof, cause the vessel and the lien to be discharged.

XI

During the term, CHARTERER shall, at their expense, keep the vessel insured under usual forms of marine insurance hull policies in a sum not less than $__N/A___ and also under usual forms of protection and indemnity policies in a sum not less than $_N/A_the protection and indemnity risks shall include claims of crew member, compensation, longshoremen and harbor workers liability, and tower's liability risk if the vessel performs

- 5 -

towage. All such insurance may provide for deductibles not to exceed $ _N/A_ for which deductible Charterer shall stand as insured. All insurance shall be taken out in the names of both CHARTERER and OWNER and shall, buy its terms, be payable to OWNER for the account of CHARTERER and OWNER as their respective interests may appear. The forms of policy and the underwriters shall be subject to OWNERS' approval. All policies shall be delivered to OWNER with evidence satisfactory to OWNER that all premiums and other charges therefor have been fully paid. Underwriters shall be notified to agree reasonably in advance to notify OWNER of any cancellation of, or material change in, any insurance unimpaired by any act, breach of warranty, or otherwise.

## XII

If CHARTERER shall fail to pay any monthly installment of rental when due or fail to keep or to perform by of their other obligations or shall violate any of the provisions Imposed upon them under this Charter or If CHARTERER shall make a general assignment for the benefit of creditors, or If a receiver of any kind shall be appointed for CHARTERER or for CHARTERERS' business, or If CHARTERER shall be adjudged bankrupt or file or have filed against them a petition In bankruptcy, or for the reorganization of any other proceeding under any of the provisions of the Bankruptcy Code, then In any event, OWNER may, without prejudice to any other rights which they may have under this Charter, retake the vessel wherever the same may be found. weather upon the high seas or in any port or other place, and without prior demand and without legal process, may enter upon any pier, dock or other place where the vessel may be and retake possession thereof.

XIII

If, during the period of this Charter, the United States or any department or agency thereof, shall requisition, commandeer or otherwise take possession of this vessel, this Charter shall thereupon terminate.

XIV

All salvage and salvage towage shall be one-fourth (1/4) for OWNER and three-fourths (3/4) for CHARTERERS' benefit after allowance of proper expenses and purporation of hire. The general average. If any, shall be adjusted and payable according to the York-Antworp Rules. 1950, and as to matters not provided for therein, according to the laws and usages of the Port of New York.

XV

Any state or federal tax ( other than Income taxes payable by OWNER on the Charter hire) which may be or become payable by OWNER or CHARTERER with respect to any use made of the vessel hereunder, or with respect to The making of the CHARTERER shall be paid by CHARTERER.

XVI

CHARTERER  shall  not  sublet the said vessel or assign this Charter or any Interest therein without the prior written consent of OWNER.

- 7 -

CMxPDF - www.fasiio.com

## XVII

To be exercised at any time on and prior to the last day of the term of this Charter. CHARTER shall have the option to purchase the vessel, and its tackle, apparel, furniture and appurtenances. by paying a purchase price of $ _N/A_ . If the CHARTER exercises this option, OWNER shall give CHARTERER credit against such purchase price for all sums theretofore paid as rent hereunder and also the sum paid, if any, on the signing of this Charter. This option shall be exercised only by notice to OWNER together with a tender of the amount necessary to complete The purchase. Should CHARTER exercise their option then OWNER will, with reasonable expedition. execute and deliver to CHARTER a good and sufficient bill of sale, in duplicate. transferring title to said vessel free of all liens and encumbrances created by OWNER, failing in which CHARTERER shall be entitled to specific performance. Should CHARTER fail to exercise The option on or before the last day of the term, then the option shall be of no further force or effect.

## XVII

Any notice given or required to be given hereunder shall be in writing and shall be mailed by certified United States Mail, Return Receipt Requested, and addressed to the appropriate party at the following addresses. Any notices so mailed shall be deemed to be received upon deposit of the same in the United States Mail:

TO OWNER:        _Dolphin Express Inc_

TO CHARTERER:    _Barracuda Inc._

- 5 -

IN WITNESS WHEREOF, this charter has been executed in multiple copies, each

of which shall be deemed to be an original by the respective parties hereto on the

day and year first above written.

OWNER:      *Dolphin Express Inc.*

BY:            *[signature]*

TITLE:       *Vice-President*

CHARTERER:    *Barracuda Inc.*

BY:            *Dean K. Luke*

TITLE:       *President*

- 3 -

Modifications


1.      Section II added ( This Charter may be terminated at the end of any such

calendar month during the original Charter period if both parties are in full agreement to

such.)

Case 2:00-cv-00115   Document 62   Filed in TXSD on 08/16/2000   Page 25 of 34

## Dolphin Docks Deep Sea Fishing Vessels

The Dolphin is an 80 foot vessels that accommodates up to 50 persons for 5 to 72 hour fishing trips. The Dolphin also has sleeping quarters and showers available only on the longer trips for the tired fisherman. Most of the time you are catching so many fish you can't sleep. Children 6 and under not fishing can go with there parents free. Other members of a party who want to site see and watch the fishing can go for half price.



The Dolphin Express is a faster boat and is used for 5 and 12 hour trips and shorter. This boat is mostly used for the Red Snapper runs in the fall and King Fish and Shark in the summer time. This boat is designed for moving fast to cut down on travel time for more fishing time. It is ideal for the whole family.



The La Pesca is the biggest boat and is used for the same trips as the Dolphin. This is a good boat to start the little ones out on because the trips are shorter.



**Back**



PLAINTIFF'S
EXHIBIT
5

Case 2:00-cv-00115   Document 62   Filed in TXSD on 08/16/2000   Page 26 of 34

# The Crew Of The Dolphin

Dean Luke has been the captain for Dolphin Docks for 6 years. He has over 14 years experience of fishing charter under his belt and it shows. This guy can put you on the fish and then show you how to catch them. Dean takes pride in his job and enjoys catching the fish more than anyone.





Greg Wilber is the 2nd Captain for Dolphin Docks and has been in the fishing charter business all his life. Greg has a love for the sea and fishing. Don't be surprised to see Greg running up and down the deck helping everyone to land the big one when the fishing gets hot and heavy.

Barron has had a lifetime at sea with a number of charter boats always making sure the crew and clients have the best food available. Barron can also be seen on deck reeling in the big one when the tuna fishing gets hot.



Jerrid, Brian, Carl and Cliff are the real backbone of the deck operations. They are a well organized crew with a vast range of information on catching and landing the big ones. These guys really put there hearts into the job because they also love to fish.

**Back**

1

1    IN THE UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF TEXAS

3    CORPUS CHRISTI DIVISION

4  TRACI LEOPARD AND          ) (
   BRYAN LEOPARD              ) (
5            Plaintiff(s)     ) (
                              ) (
6  VS.                        ) (      NO. C-00-115
                              ) (
7  DOLPHIN DOCK, INC., ET AL ) (
            Defendant(s)      ) (

8

9

10  * * * * * * * * * * * * * * * * * * * * * * * * *

11        ORAL AND VIDEOTAPED DEPOSITION OF

12             BRYAN DON LEOPARD

13              JULY 20, 2000

14

15  * * * * * * * * * * * * * * * * * * * * * * * * *

16

17       ORAL and VIDEOTAPED DEPOSITION of BRYAN DON LEOPARD,
   produced as a witness at the instance of the DEFENDANTS,
18  and duly sworn, was taken in the above-styled and
   numbered cause on JULY 20, 2000, from 12:08 p.m. to
19  12:55 p.m., before CONNIE S. CALVERT, Registered
   Professional Reporter, Federally Certified Shorthand
20  Reporter in and for the Western District of Texas, and
   Certified Shorthand Reporter #1867 in and for the State
21  of Texas, reported by stenographic machine shorthand at
   the LAW OFFICES OF BOB J. SPANN & ASSOCIATES, 1109 Santa
22  Fe, Corpus Christi, Texas  78463, pursuant to the
   Federal Rules of Civil Procedure and the provisions
23  stated on the record or attached hereto.

24

25                              COPY

PLAINTIFF'S EXHIBIT 4

BRYAN LEOPARD          07-20-00          EXAM/SPANN

1      Q.    Yeah.

2      A.    So, I believe we gave him half and he put it on

3  his credit card or -- I'm not sure how he paid it; but

4  he paid it.  And then before we went on the trip, we

5  gave him the rest of the money and he paid it to Dolphin

6  Docks.

7      Q.    Had your wife attended on the other trip?

8      A.    No.

9      Q.    So this was her first attendance --

10     A.    Yes.

11     Q.    -- to this area.

12              Now, what kind of information did you-all

13  get on this trip before the day that you would go out on

14  the trip?  Did you get any kind of information from the

15  boat or from the person who took your money and gave you

16  your reservation?

17     A.    No, sir.

18     Q.    Of course you had him do this, so you didn't

19  talk to anyone yourself, did you, about this boat trip.

20     A.    No, sir.

21     Q.    Was all the tackle furnished by the boat?

22     A.    Well, we actually never went fishing; but,

23  yes.

24              You talking about the previous trip or the

25  one that the suit is against?

PLAINTIFF'S
EXHIBIT
4

CALVERT REPORTING SERVICE (361)992-3398  FAX 992-4247
POB 271558, CORPUS CHRISTI, TX 78427    1-800-773-0254

1        IN THE UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF TEXAS

3              CORPUS CHRISTI DIVISION

4  TRACI LEOPARD AND        ) (
   BRYAN LEOPARD            ) (
5          Plaintiff(s)     ) (
                            ) (
6  VS.                      ) (      NO. C-00-115
                            ) (
7  DOLPHIN DOCK, INC., ET AL ) (
          Defendant(s)      ) (

8

9

10 * * * * * * * * * * * * * * * * * * * * * * * * * *

11      ORAL AND VIDEOTAPED DEPOSITION OF

12            BRYAN DON LEOPARD

13             JULY 20, 2000

14

15 * * * * * * * * * * * * * * * * * * * * * * * * * *

16

17     ORAL and VIDEOTAPED DEPOSITION of BRYAN DON LEOPARD,
   produced as a witness at the instance of the DEFENDANTS,
18 and duly sworn, was taken in the above-styled and
   numbered cause on JULY 20, 2000, from 12:08 p.m. to
19 12:55 p.m., before CONNIE S. CALVERT, Registered
   Professional Reporter, Federally Certified Shorthand
20 Reporter in and for the Western District of Texas, and
   Certified Shorthand Reporter #1867 in and for the State
21 of Texas, reported by stenographic machine shorthand at
   the LAW OFFICES OF BOB J. SPANN & ASSOCIATES, 1109 Santa
22 Fe, Corpus Christi, Texas  78463, pursuant to the
   Federal Rules of Civil Procedure and the provisions
23 stated on the record or attached hereto.

24

25

COPY                              PLAINTIFF'S
                                  EXHIBIT
                                     5

CALVERT REPORTING SERVICE (361)992-3398  FAX 992-4247
POB 271558, CORPUS CHRISTI, TX 78427   1-800-773-0254

1      Q.   You don't specifically have a complaint about

2  the boat crew or the Dolphin Docks?

3      A.   So, I misunderstood your question.  So, yes, I

4  do against the boat crew and the Dolphin Docks.  I

5  believe they took us out in too rough of weather that

6  they shouldn't have.  And when given the -- asked to

7  return, they did not return.

8           They did not help with any of the rescue

9  whatsoever.  They did not help with my wife when she was

10 sick and laying on the deck.

11           And they didn't -- I mean, they didn't

12 even tell us what the weather was like.

13     Q.   Was there something that you think they should

14 have done that would have changed the things that

15 happened?

16     A.   If they would have told us the seas that were

17 out there, yes, we probably wouldn't have gone.

18     Q.   What kind of information, if they had given

19 you, would you have said "I don't want to go"?

20     A.   If they would have told us -- and I know now

21 the report.  I guess it was close to ten-foot seas.  If

22 they would have told us that it was that rough out

23 there, we wouldn't have gone.  If they would have said,

24 you know, "We are having six-to-ten-foot seas", I would

25 not have gotten on that boat.

PLAINTIFF'S
EXHIBIT
5

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 SOUTHERN DISTRICT OF TEXAS

 3                   CORPUS CHRISTI DIVISION

 4    TRACI LEOPARD AND        ) (
      BRYAN LEOPARD            ) (
 5              Plaintiff(s)   ) (
                               ) (
 6    VS.                      ) (      NO. C-00-115
                               ) (
 7    DOLPHIN DOCK, INC., ET AL ) (
               Defendant(s)    ) (
 8

 9

10    * * * * * * * * * * * * * * * * * * * * * * * * *

11            ORAL AND VIDEOTAPED DEPOSITION OF

12                     TRACI LEOPARD

13                     JULY 20, 2000

14

15    * * * * * * * * * * * * * * * * * * * * * * * * *

16

17         ORAL and VIDEOTAPED DEPOSITION of TRACI LEOPARD,
      produced as a witness at the instance of the DEFENDANTS,
18    and duly sworn, was taken in the above-styled and
      numbered cause on JULY 20, 2000, from 10:11 a.m. to
19    12:05 p.m., before CONNIE S. CALVERT, Registered
      Professional Reporter, Federally Certified Shorthand
20    Reporter in and for the Western District of Texas, and
      Certified Shorthand Reporter #1867 in and for the State
21    of Texas, reported by stenographic machine shorthand at
      the LAW OFFICES OF BOB J. SPANN & ASSOCIATES, 1109 Santa
22    Fe, Corpus Christi, Texas  78463, pursuant to the
      Federal Rules of Civil Procedure and the provisions
23    stated on the record or attached hereto.

24

25                      COPY
```

1   very painful.

2       Q.  . Yeah.  Well, I feel sorry for you.  I have been

3   sick, too.  I think most people who have been out have

4   gotten sick from time to time.

5                 Okay.  Can you tell me who it was that you

6   first told that you wanted to go back in to shore?

7       A.  The deck hand.

8       Q.  Do you know his name?

9       A.  No.

10      Q.  Can you describe him for me?

11      A.  He is kind of an older gentleman.  I think he

12  had dark hair.  I think he had facial hair, but I'm not

13  sure.

14      Q.  Okay.  Well, do the best you can.  Was he tall

15  or short, medium-sized?

16      A.  Yeah, he was -- I think he was medium.  I don't

17  recall him being tall or short.

18      Q.  Was he Anglo or was he black or was he

19  Hispanic?  How would you --

20      A.  Uh...

21      Q.  You wouldn't be able to do that?

22      A.  He was -- his skin color was white or tan.

23      Q.  He hadn't been on the water very long with

24  that.

25      A.  He was a white man.  I'm not sure of his race.

1     Q.   Okay.  All right.  I'm just trying to get an

2   identification, the best you can do.

3             Was he heavy or slender or --

4     A.   I don't know.

5     Q.   -- or fat?

6     A.   I don't remember anyone being fat.

7     Q.   Yeah.  Okay.  Well, could he speak English

8   good?

9     A.   He spoke English to me.

10     Q.   So you-all could understand each other.

11             And when you asked to go back, what did he

12   tell you?

13     A.   He left right away.  I just told him to go ask

14   the Captain if we can go back.

15     Q.   Oh, I see.  So he didn't reply.  He just went

16   to do your bidding.

17     A.   I thought he went to go talk to the Captain.

18     Q.   As far as you know.

19     A.   Right.

20     Q.   Did he ever come back?

21     A.   I don't know.

22     Q.   Did anyone else ever come to you?

23     A.   My husband.

24     Q.   Your husband.  Was he by you and with you at

25   the time this conversation with the deck hand --

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TRACI LEOPARD AND BRYAN LEOPARD | * | |
| VS. | * | CIVIL ACTION NO.: C-00-115 |
| DOLPHIN DOCK, INC., ET AL | * | |

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CAME ON FOR CONSIDERATION on this day, Defendants, Dolphin Dock, Inc., Gulley's Diving Service, Inc. and Dolphin Express, Inc.'s Motion for Summary Judgment, and the Court having considered same and hearing the argument of counsel is of the opinion that said Motions should be, in all things, DENIED. It is, therefore,

ORDERED, ADJUDGED and DECREED that Defendant, Dolphin Dock, Inc.'s Motion for Summary Judgment is hereby in all things denied. IT IS SO ORDERED.

ORDERED, ADJUDGED and DECREED that Defendant, Dolphin Express, Inc.'s Motion for Summary Judgment is hereby in all things denied. IT IS SO ORDERED.

ORDERED, ADJUDGED and DECREED that Defendant, Gulley's Diving Service, Inc.'s Motion for Summary Judgment is hereby in all things denied. IT IS SO ORDERED.

SIGNED this the _____ day of _____, 2000.


_____
JUDGE PRESIDING